# EXHIBIT A

When recorded mail to:

**CHARLES I. FRIEDMAN, P.C.**
CITYSCAPE, SUITE 1650
ONE EAST WASHINGTON
PHOENIX, ARIZONA 85004

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES

20200841473    09/09/2020    04:35 PM

ELECTRONIC RECORDING

DRJacksonJdgmnt-13-1-1--,N

# JUDGMENT/DECREE OF DISSOLUTION OF MARRIAGE

Judgment Debtor:

David Russel Jackson
2550 S. San Tan Village Pkwy. #4058
Gilbert, AZ 85295

# DO NOT REMOVE

## This is part of the official document.

# JUDGMENT CREDITOR'S INFORMATION STATEMENT
## PURSUANT TO A. R. S. § 33-967(A)

1    A.    The correct name of Judgment Debtor:    David Russel Jackson

     B.    Last known address of Judgment Debtor:

           David Russel Jackson
           2550 S. San Tan Village Pkwy. #4058
           Gilbert, AZ 85295

2.   Name and address of Judgment Creditor:

           Donna J. Jackson
           c/o Charles I. Friedman, P.C.
           Cityscape, Suite 1650
           One East Washington
           Phoenix, Arizona 85004

3.   The principal amount of the judgment as entered is Four Hundred Ninety-Seven
     Thousand Five Hundred Fifty-Six Dollars and ninety-nine cents ($497,556.99),
     plus accruing interest on the principal amount thereon at the statutory rate of
     3.25% per annum from September 2, 2020 until paid in full.

4.   The Judgment Debtor's personal identifying information is as follows:

           Social Security Number:    xxx-xx-1888
           Date of Birth:             5/12/1958
           Driver's License Number:   unknown

5.   No stay of enforcement has been ordered by the court that rendered the judgment.

     DATED this _____ day of _____, 2020.

                              CHARLES I. FRIEDMAN, P.C.


                              Charles I. Friedman
                              Attorney for Judgment Creditor

SUPERIOR **COURT OF ARIZONA**
**MARICOPA COUNTY**
HONORABLE JOHN BLANCHARD

David Russell Jackson
    Petitioner

Case Number: FC2019-094023

AND

Donna **Jean** Jackson
    Respondent

## DECREE OF DISSOLUTION OF MARRIAGE

Prior to the Trial, the parties reached several agreements, as reflected in part below and recited on the record and approved as a Rule 69 settlement agreement. The primary issues left in dispute are (1) the allegation by Respondent Donna Jackson ("Wife") that Petitioner David Jackson ("Husband") transferred funds, without her knowledge or consent, her sole and separate funds that she held in an investment account; (2) the character of the Morrison Ranch Residence; (3) Husband's Claim for Reimbursement/Set-off for mortgage/community expenses; and (4) Wife's claim for an interest in Husband's Businesses (relating to Husband's use of and commingling with Wife's separate funds for his businesses).

The Evidentiary hearing in this matter occurred on 08/27/2020. The Court has considered the evidence which includes where applicable/presented, the demeanor of the witnesses, reviewed the exhibits as well as the case history, and considered the parties' arguments and agreements.

The Court makes the following findings and enters the following orders:

## JURISDICTIONAL FINDINGS

**THE COURT FINDS** as follows:

- At the time this action was commenced at least one of the parties was domiciled in the State of Arizona and that said domicile had been maintained for at least 90 days prior to filing the Petition for Dissolution of Non-Covenant Marriage.
- The conciliation provisions of A.R.S. § 25-381.09 have either been met or do not apply.
- The parties were married on May 13, 2009. By operation of law, the marital community is deemed to have terminated on June 14, 2019.
- This was not a covenant marriage.
- The marriage is irretrievably broken and there is no reasonable prospect for reconciliation.
- Donna Jackson is not pregnant.
- To the extent that it has jurisdiction to do so, the court has considered, approved and made provision for the maintenance of each spouse and the division of property and debts.
- There are no minor children common to the parties.

## DISSOLUTION OF MARRIAGE

**IT IS ORDERED** dissolving the marriage of the parties and restoring each party to the status of a single person.

Jackson and Jackson

**Case Number:** FN2019-094263

## DIVISION OF PROPERTY AND DEBTS

### Community Sole and Separate Property Claims and Debts

The Court shall divide any disputed property in accordance with the property's character. Property is characterized by the time of its acquisition. If acquired by either spouse before marriage or acquired during marriage by gift, devise, or descent, property is characterized as separate property. A.R.S. § 25-213(A). The Court shall assign each spouse's sole and separate property to that spouse. A.R.S. § 25-318(A).

Property acquired by either spouse during marriage is characterized as community property (with the exceptions of property acquired by gift, devise, or descent). A.R.S. § 25-211(B). There is a presumption that any property acquired by either spouse during marriage is community property, unless demonstrated otherwise by clear and convincing evidence. *See Sommerfield v. Sommerfield*, 121 Ariz. 575, 578, 592 P.2d 771, 774 (1979). Any property acquired by either spouse outside of Arizona shall be deemed to be community property if such property would have been characterized as community property had it been initially acquired in Arizona. A.R.S. § 25-318(A).

### Equitable Division

The Court shall divide community property equitably, although not necessarily in kind, without any regard to marital misconduct. A.R.S. § 25-318(A). As a general presumption, equitable division requires that community property be divided substantially equally. *See Toth v. Toth* 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997). However, the court may order an unequal division of community property in consideration of excessive or abnormal expenditures or the destruction, concealment, or fraudulent disposition of property. A.R.S. § 25-318(C).

When dividing property, the Court may consider all related debts and obligations. A.R.S. § 25-318(B). To determine property's value, the court shall select a valuation date. The selection of this valuation date rests within the wide discretion of the trial court and shall be tested upon review by the fairness of the result. *See Sample v. Sample*, 152 Ariz. 239, 242-43, 731 P.2d 604, 607-08 (App. 1986).

### Unequal Division of Property

Only rarely is unequal division of community property appropriate to achieve equity. *See Toth*, 190 Ariz. at 221, 946 P.2d at 903 (unequal division of property was appropriate because one spouse contributed substantially disproportionate separate funds compared to the other's contribution); *see also Flower v. Flower*, 223 Ariz. 531, 531, 225 P.3d 588, 588 (App. 2010)(unequal division of property was appropriate because the parties incurred substantial community debt to benefit one spouse's separate property). *But see Inboden v. Inboden*, 223 Ariz. 542, 547, 225 P.3d 599, 604 (App. 2010) (vacating an order for the unequal division of property because each spouse had contributed separate funds to joint property).

The Court shall consider all equitable factors before ordering an unequal division of community property, including: the length of the marriage, the contributions of each spouse to the community, the source of funds used to acquire the property to be divided, the allocation of debt, and any other factor that may affect the outcome. *See Inboden*, 223 Ariz. at 547, 225 P.3d at 604.

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY
### HONORABLE JOHN BLANCHARD

**Jackson and Jackson**　　　　　　　　　　　Case Number: FN2019-004363

THE COURT FINDS that this case does present a unique set of facts or circumstances. Therefore, an equal division of community property is inappropriate to achieve equity. Separate and apart from the analysis over whether the Morrison Ranch Property is community property or sole and separate property, it would be otherwise inequitable to award Husband any of the proceeds on the Morrison Ranch property, or provide Husband with a reimbursement of funds relating to any of his mortgage payments. See, e.g., In re the Marriage of Flower, 223 Ariz. 531 (2010) (recognizing that equal is not always equitable). The court may order an unequal division of community property in consideration of excessive or abnormal expenditures or the destruction, concealment, or fraudulent disposition of property. A.R.S. § 25-318(C). Here, the Court finds that Husband concealed and fraudulently disposed of Wife's sole and separate assets and forged her signature on key documents leading to the recharacterization of Wife's sole and separate property.

## Real Property

THE COURT FINDS that the parties own or have an interest in the following real property:

- Property located at 3779 E MORRISON RANCH PKWY, Gilbert, AZ, 85295 which is the separate property of Donna Jackson.
- Property located at 2549 South Lotus, Mesa AZ which is the separate property of Donna Jackson.

THE COURT FURTHER FINDS that Wife signed the documents conveying (or gifting) her sole and separate property to the community during the 2013 refinance closing. The signed Warranty Deed creates a presumption that Wife gave the Morrison Ranch property to the community. Wife must then overcome the presumption of a gift with clear and convincing evidence. As noted in detail below, the Court finds that Wife rebutted, with clear and convincing evidence, the presumption of a gift to the community.

The parties entered into a Pre-nuptial Agreement prior to their marriage ("the PNA"). The PNA, among other things, provides that all property will be treated as separate property owned solely by one party unless there is proof of shared legal ownership. Any sole and separate property of a party at the time of the marriage, or acquired separately after the marriage, would remain sole and separate property. At the time of the PNA, there wasn't yet a separate Morrison Ranch property to list in the exhibits to the PNA. Wife had not yet closed on the purchase at the time of the PNA. But the parties knew that Wife was in the process of acquiring the property, that it would close sometime around the time of the marriage, and (importantly) it would be titled as Wife's sole and separate property purchased with Wife's sole and separate property. If the parties intended that the Morrison Ranch property was really community property and that it would be later re-characterized, they could have reflected that agreement in the PNA. Indeed, Husband testified that the parties had such an intent at the time of Wife's purchase.

Wife purchased the Morrison Ranch property prior to the marriage using her separate money for the down payment and to fund improvements to the home prior to move-in. Wife credibly described how she provided Husband $100,000 to coordinate upgrades for the new-build home following the closing. The cost of the upgrades that she wanted were far higher through the builder than what Husband could coordinate on his own. Wife's income paid for a substantial portion of the mortgage (with Husband contributing a correspondingly small amount from his business income). The money that Husband did contribute to the mortgage was most likely Wife's sole and separate investment funds transferred by Husband to the joint account and through his business account.

The parties refinanced the home in 2013 to take advantage of the lower interest rate and to shorten the term of the loan. At that time, the equity in the home was $179,000. Husband took charge of that refinance process. Wife paid off significant personal debt to place her credit-rating (debt ratio) in position to qualify for the new

Jackson and Jackson                                           Case Number: **FN2019-094263**

loan as the sole borrower on the refinance.

Husband filled out the Uniform Residential Home Application, which noted that the title to the property would be held by "Donna J. Jackson and David Jackson as joint tenants." The signature for all of these documents is plainly not Wife's signature. Although the parties did not present a handwriting analysis or expert to testify and opine about the signatures, the signature of Wife (who is left handed) is nothing like the signature found on all of the application documents prepared and submitted by Husband. The signatures bear zero resemblance. Husband's testimony that Wife signed each of these documents as presented on the documents is not credible. Wife's denials that she signed the documents is credible and supported by the evidence.

At the time of the closing on the property, Wife signed a Warranty Deed that conveyed the refinanced property to "Donna J. Jackson and David R. Jackson, wife and husband, as community property with right of survivorship." This signature was notarized and Wife concedes that it is her signature. Wife alleges that the title officer "rushed" her through the documents and did not explain any of the documents. That testimony was inconsistent with her earlier testimony that the title officer described the purpose of each document (even if briefly) as the parties signed the "stack of documents." Wife also testified that she did not pay attention to the documents and simply trusted her husband (an experienced financial advisor). Husband contends that even if Wife did not sign the pre-closing documents, she essentially ratified that transfer when she signed all of the paperwork at the closing, including the warranty deed and other documents confirming that the property would be held in community property.

Husband testified that the parties always intended to convert the Morrison Ranch home to community property. He explained that he could not qualify on the original loan, so they proceeded with having the loan only in her name. He testified that the refinance simply restored that original intent. Husband's testimony is not consistent with the evidence. He did not qualify for original loan and he did not qualify for the refinance. In other words, the parties were in the same position at the refinance that they were for the original loan. As noted above, the parties had entered into the PNA at the time that Wife was closing on the purchase of the property. If Wife intended to gift the property following the marriage, the PNA would be the place to document that donative intent. Husband did not present any other evidence of donative intent. In fact, Husband and Wife both repeatedly testified that the primary purpose of the refinance was to take advantage of the lower rates and to reduce the number of years on the loan (30 year to 15 year mortgage). Husband could not identify a plausible reason why Wife would transfer her sole and separate property to the community.

Husband alleged that the fact that the marital community paid the mortgage through the joint banking account is further evidence of community property (or would at least create a community lien on the equity). But Husband also conceded that regardless of the joint nature of the bank account, he did not contribute large amounts (or any amounts) to the mortgage. Husband conceded at trial that his businesses operated essentially at a loss during the entirety of the marriage and he therefore did not contribute money from his personal sources to the community. As noted elsewhere herein, Wife has thoroughly and credibly traced (through an expert witness, Chris Gorman) her separate property investment funds being improperly withdrawn and funneled into Husband's business (with some amounts of Wife' money being used by Husband to pay some of the mortgage payments).

Wife has shown by clear and convincing evidence that she did not intend to gift or otherwise transfer the Morrison Ranch property to the community and instead consistently intended to keep that asset as her sole and separate property.

**THE COURT ORDERS** the property at 3779 E MORRISON RANCH PKWY, Gilbert, AZ, 85295 shall be awarded to Donna Jackson as sole and separate property.

Jackson and Jackson                                    Case Number: FC2021-052613

**THE COURT FURTHER ORDERS** awarding the entirety of the Morrison Ranch proceeds of $385,826.97 (currently held in a trust account) to Wife as those funds are proceeds from the sale of her sole and separate property. Those funds held in the trust account shall be immediately transferred to Wife.

IT IS FURTHER ORDERED denying Husband's claim for reimbursement/set off for funds he claimed were made to mortgage/community expenses through his personal or business accounts. The evidence supports Wife's claim that Husband abused Wife's trust and liquidated Wife's personal investment funds for those mortgage/investment expenses. To the extent that Husband used any personal funds for the mortgage or other community expenses, those amounts were minimal. Additionally, given Husband's improper actions relating to the forged signatures on the refinance application documents and his liquidation of Wife's separate property investment funds, it would be inequitable to award Husband any reimbursement.

**THE PARTIES AGREE AND THE COURT THEREFORE ORDERS** the property at 2549 South Lotus, Mesa AZ shall be awarded to Donna Jackson as sole and separate property.

## Personal Property

THE **COURT FINDS** that the parties agree to the distribution of the following personal property:

- Motor Vehicles described as 2019 Lexus NX300 to be awarded to Donna Jackson
- Motor Vehicles described as Leased Acura to be awarded to David Jackson

**IT IS THEREFORE ORDERED:**

- Motor Vehicles described as 2019 Lexus NX300 to be awarded to **Donna Jackson** subject to any liens or encumbrances.
- Motor Vehicles described as Leased Acura to be awarded to **David Jackson** subject to any liens or encumbrances.

**IT IS FURTHER ORDERED:**

- David Russel Jackson is awarded as sole and separate property, subject to any liens or encumbrances on the property, all vehicles, household furniture, furnishings and appliances, and other personal property in his/her possession.
- Donna Jean Jackson is awarded as sole and separate property, subject to any liens or encumbrances on the property, all vehicles, household furniture, furnishings and appliances, and other personal property in his/her possession.

## Financial Accounts

THE **COURT FINDS** the parties agree to the distribution of the following financial accounts:

- 529 College Savings Plan FBO **Mackenzie Jackson** to be awarded 0% to David Russel Jackson and 100% to Donna Jean Jackson

**IT IS THEREFORE ORDERED:**

- 529 College Savings Plan FBO Mackenzie Jackson to be awarded 0% to David Russel Jackson and 100% to Donna Jean Jackson

## Additional Offsets

**Jackson and Jackson**

Case Number: FN2019-092463

### Wife's Sole and Separate Investment Funds held in State Farm Mutual Fund Investment Account

A major issue at trial was what became of Wife's sole and separate funds held in a State Farm Mutual Fund ("SFMF") account. Husband contends that he managed Wife's money at her direction and with her consent. While he acknowledged that Wife is entitled to some "Reimbursement" of those funds used for community expenses, he argued that the funds were properly used with Wife's permission. Wife contends that Husband wasn't authorized to touch her money, that he stole her money and used it for his separate businesses, and that he defrauded her. Wife credibly testified that she relied on Husband for financial matters because she trusted her husband and because of Husband's background, experience, and certifications/licenses on financial, securities, and insurance. While she gave him express consent to handle all of her personal and business finances, she did not authorize him to transfer or use funds that were in this sole and separate savings account. Stated differently, she authorized Husband to manage her finances—not liquidate or spend them.

Prior to the marriage, the parties entered into the Pre-nuptial Agreement. The PNA, among other things, confirmed some of the parties' separate property. The agreement also resolved how the parties' future accumulation of separate property would be treated. The PNA provides that sole and separate property would remain sole and separate unless the parties agreed in writing to convert. Among Wife's separate property was her Chase investment account (with a balance of $118,778). In 2013, Wife received $275,000 as a gift from her mother. The parties agree that the Chase investment account and the $275,000 gift were and remained Wife's sole and separate property.

Sometime in 2013, Husband opened the SFMF account for Wife in her name to hold her sole and separate Chase investment and the gift money from her mother. When he opened that account, $318,778 of Wife's separate funds were deposited into the new account. $20,000 remains unaccounted for. Husband testified that he recommended that Wife move her money from her Chase Banker to his company. He argues the Chase fund was not performing and he would be better positioned to track and manage these funds. Wife testified that she trusted Husband and his judgment and consented to the move. She also denied that the Chase fund was under-performing at the time of the move.

During the marriage, Husband handled all of the couple's financial affairs. He testified that "from day one" he handled all household finances at her insistence. He also handled his own business finances and the finances of Wife's separate businesses. He testified that Wife had little to no interest in financial matters and trusted him to "take care of it." The parties had one joint bank account that was used for most of the finances for the family (Chase x4423). Husband testified that all income from any source was deposited here and any household expenses or withdrawals were made from this account.

Wife's American Airlines wages were deposited in the joint account. She testified that she understood that Husband was likewise depositing his income from his insurance business into this account. Husband testified that he kept Wife informed on the financial status of the family and the fact that he was not contributing income to the account. Wife denies that he reported these shortfalls and instead described the finances as positive and that he was closing big sales. Wife also testified that she believed that Husband was contributing substantial funds into their joint account.

Over the period of three years, Husband moved all of Wife's separate funds out of the SFMF account. He alleged that he did so with the consent of Wife. He noted that Wife gave him full authority over any and all finances, and this investment account was no exception. Wife credibly and forcefully denied that she ever gave Husband permission to withdraw her money. She also testified that she certainly never gave him permission to take all of her personal savings and use it all for his business. She also testified that she had no

Jackson and Jackson

Case Number: FN2019-094263

knowledge of those transfers and trusted her Husband to protect (not drain) those accounts. Wife credibly testified about her shock upon Husband disclosing to her at the end of the relationship that her SFMF account was gone.

Notably, Husband originally moved Wife's money from the Chase investment account to SFMF because the Chase fund was underperforming. That was Husband's testimony. He obtained Wife's consent to make that move on that basis. But when he later disposed of the SFMF funds, he did not do so to improve on underperforming accounts. He did not transfer the money to a higher yield investment. He did not instantly her funds. He did not move money to a different investment vehicle. He simply spent it. All of it. Even if Husband had the carte blanche authority over Wife's funds as he alleged, that authority must have its limits. Husband's actions and decisions must at least be reasonable and consistent with the parties' implied duties of good faith and fair dealing. See, e.g., the FNA (express confirmation of parties' duties of good faith and fair dealing). Perhaps he could have reinvested SFMF back into another investment fund (BlackRock or Chase funds, for example). But his position that he had the implicit authority to liquidate Wife's sole and separate investment funds and spend the bulk of the money to fund his business, is not plausible and is rejected.

Testifying expert (for Wife), Chris Gorman, analyzed the bank accounts and traced the funds that left the SFMF. His report opined that a total of $410,000 was transferred out of the SFMF. He traced $319,085 of that amount directly from SFMF, to the joint bank account, and into Husband's business account. $390,509 of Wife's sole and separate money left the SFMF account, went into Husband's business account, and was never returned to Wife. Mr. Gorman also analyzed how those funds would have grown (using historical data, not speculative future predictions) had the funds stayed where Wife intended them to stay. See Page 13, Gorman report.

The Court finds, by clear and convincing evidence, that Husband intentionally, improperly, and without authorization transferred $390,509 of Wife's sole and separate funds from her SFMF investment account. The Court further finds that had he not removed her funds, those funds would have grown to $473,410 (using the historical data for growth had the funds stayed in SFMF and converted to BlackRock funds when that fund took over the State Farm accounts). The Court credits Wife's testimony that she had no intention of moving or transferring those funds, so the most likely outcome (had Husband not taken the funds) was that the funds would have been converted to the BlackRock account.

Wife also seeks recovery of the missing $20,000 that disappeared at the time that the fund was established. Husband did not explain how this money was used (but he was the one that controlled it) and Mr. Gorman could not trace it with the documents that he had available. That money never was invested in the SFMF account. The Court finds the best estimate of the growth of that amount is by using the same methodology that Mr. Gorman used for the traced funds (for an increase of $4,146.99). Accordingly,

IT IS ORDERED entering a judgment in favor of Respondent Donna Jean Jackson and against Petitioner David Russel Jackson in the amount of $497,556.99, plus interest at the statutory rate of 3.25% from the date of this Decree until paid in full.

## Debts

**THE COURT FINDS** that no community debts were identified for allocation and therefore the Court shall not enter any Orders with regard to the division of community debts.

**IT IS ORDERED** as follows:

Case 2:24-bk-03285-EPB    Doc 28-1    Filed 09/26/24    Entered 09/26/24 15:14:01    Desc
Exhibit    Page 10 of 21

Jackson and Jackson                                    Case Number: FN2019-094263

- David Jackson shall be solely responsible for any credit card or debt in their name incurred after service of the Petition.
- Donna Jackson shall be solely responsible for any credit card or debt in their name incurred after service of the Petition.
- Any community debts that were not identified at the time of the trial shall be divided equally between the parties.
- David Jackson shall ensure that Donna Jackson's name is removed from all credit accounts assigned to them in this Decree by October 12, 2020.
- Donna Jackson shall ensure that David Jackson's name is removed from all credit accounts assigned to them in this Decree by October 12, 2020.
- Each party shall pay any debt incurred by him or her respectively since the date of service of the Petition in the matter.
- Each party shall indemnify and hold harmless from any and all debts designated as the responsibility of that party by the terms set forth in this Decree.

## Retirement Accounts

THE COURT FINDS that the parties have agreed to waive and give up their respective interest in any retirement benefits, pension plans and deferred compensation of the other party.

IT IS ORDERED that in fairly and equitably allocating the community assets and the community debts, each of the party shall retain only their interest in any retirement benefits, pension plans, and deferred compensation in their own name, and each shall waive such benefits, plans, monies and accounts in the name of the other spouse, if any.

## Equalization

THE COURT FINDS that the above allocation of the real and personal property, when considered with the division of debt, is fair and equitable under the circumstances and that no further adjustments are necessary.

## ATTORNEY FEES AND COSTS

Donna Jackson has requested an award of attorney fees and costs. An award of attorney fees and costs is governed by A.R.S. § 25-324. A.R.S. § 25-324 provides as follows:

A. The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceedings under this chapter or chapter 4, article 1 of this title. On request of a party or another court of competent jurisdiction, the court shall make specific findings concerning the portions of any award of fees and expenses that are based on consideration of financial resources and that are based on consideration of reasonableness of positions. The court may make these findings before, during or after the issuance of a fee award.

Jackson and Jackson                                      Case Number: FN2019-094263

B.  If the court determines that a party filed a petition under one of the following circumstances, the court shall award reasonable costs and attorney fees to the other party:

1.  The petition was not filed in good faith.
2.  The petition was not grounded in fact or based on law.
3.  The petition was filed for an improper purpose, such as to harass the other party, to cause an unnecessary delay or to increase the cost of litigation to the other party.

C.  For the purpose of this section, costs and expenses may include attorney fees, deposition costs and other reasonable expenses as the court finds necessary to the full and proper presentation of the action, including any appeal.

D.  The court may order all amounts paid directly to the attorney, who may enforce the order in the attorney's name with the same force and effect, and in the same manner, as if the order had been made on behalf of any party to the action.

THE COURT FINDS that there is no substantial disparity of financial resources between the parties.

THE COURT FURTHER FINDS that David Jackson did not act unreasonably in the litigation.

THE COURT FURTHER FINDS that the provisions of A.R.S. § 25-324(B) do not apply.

THE COURT FURTHER FINDS that neither David Jackson nor Donna Jackson knowingly presented a false claim, knowingly accused the other party of making a false claim, or violated a court order compelling disclosure or discovery such that an award of attorney fees and costs is appropriate under A.R.S. § 25-415.

IT IS THEREFORE ORDERED denying Donna Jackson's request for attorney fees and costs.

Case 2:24-bk-03285-EPB    Doc 28-1    Filed 09/26/24    Entered 09/26/24 15:14:01    Desc
Exhibit    Page 12 of 21

Jackson and Jackson                                    Case Number: FN2019-094263

## ADDITIONAL ORDERS

**IT IS ORDERED** by agreement of the parties, Wife's business, Radiance Matters, LLC, is confirmed to Wife as her sole and separate property.

Wife also seeks an interest in Husband's separate businesses (Jackson Insurance Group, PLLC and Insurance Agency Owners Alliance, LLC). Wife's basis for this claim is the fact that Husband used Wife's separate funds from the State Farm investment funds to support those businesses and her funds were commingled with Husband's business accounts. Wife also seeks to recover those same funds from Husband in the form of a judgment for his fraudulent disposition of those assets. The Court has separately awarded Wife a judgment in the full amount of those improperly used funds, including an award of the growth those funds would have achieved but for Husband's improper and fraudulent transfers. Accordingly,

IT IS ORDERED, Husband's interests in his businesses, Jackson Insurance Group, PLLC and Insurance Agency Owners Alliance, LLC, are confirmed to Husband as his sole and separate property.

No further claims or issues remain for the Court to decide. Therefore, IT IS FURTHER ORDERED pursuant to Rule 78(C), Arizona Rules of Family Law Procedure, this final judgment/decree is signed by the Court and it shall be entered by the Clerk. The time for appeal begins upon entry of this judgment by the Clerk. For more information on appeals, see Rule 8 and other Arizona Rules of Civil Appellate Procedure.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.


Done in open Court on: 09/02/2020


_____
Judge John Blanchard

CASE NUMBER: FN2019-094263

E-FILING ID #: 11967657

SIGNATURE DATE: 9/2/2020

FILED DATE: 9/4/2020 8:00:00 AM

CHARLES I FRIEDMAN

TERRY J FONG

The foregoing document is a full, true and correct copy of the original electronically filed document on file with the Clerk of the Court.

Attest September 9, 20 20

JEFF FINE, Clerk of the Superior Court of the State of Arizona in and for the County of Maricopa.

By _____ C. Nava _____ Deputy

# EXHIBIT B

**Fill in this information to identify your case:**

Debtor 1 **David R Jackson**
First Name      Middle Name      Last Name

Debtor 2
(Spouse if, filing)    First Name      Middle Name      Last Name

United States Bankruptcy Court for the:   DISTRICT OF ARIZONA

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

  ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

  ■ Yes. Fill in all of the information below.

### Part 1: List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |
|---|---|---|---|---|
| **2.1** **Toyota Financial Services**<br>Creditor's Name | Describe the property that secures the claim: | $37,000.00 | $0.00 | $37,000.00 |

**2024 Toyota Tacoma 10 miles Leased**

P.O. Box 5855
Carol Stream, IL
60197-5855

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number   **2846**

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $37,000.00 |
| If this is the last page of your form, add the dollar value totals from all pages.<br>Write that number here: | $37,000.00 |

### Part 2: List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

**Fill in this information to identify your case:**

Debtor 1    **David R Jackson**
First Name     Middle Name     Last Name

Debtor 2
(Spouse if, filing)    First Name     Middle Name     Last Name

United States Bankruptcy Court for the:    DISTRICT OF ARIZONA

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

**Part 1:**    **List All of Your PRIORITY Unsecured Claims**

1. **Do any creditors have priority unsecured claims against you?**

   ■ No. Go to Part 2.

   ☐ Yes.

**Part 2:**    **List All of Your NONPRIORITY Unsecured Claims**

3. **Do any creditors have nonpriority unsecured claims against you?**

   ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

   ■ Yes.

4. **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  |  |
|---|---|---|
|  |  | **Total claim** |

| 4.1 | **Chase Card Services** | Last 4 digits of account number   9190 | **$9,973.14** |
|---|---|---|---|

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**P.O. 15298**
**Wilmington, DE 19850**

When was the debt incurred?    **Opened 09/20   Last Active 4/02/24**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Credit Card**

| 4.2 | **Cvent Inc.** | Last 4 digits of account number _____ | $39,375.00 |
|---|---|---|---|

Nonpriority Creditor's Name
**1765 Greensboro Station Place 7th Floor**
**Mc Lean, VA 22102**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify　**Money Owed**

---

| 4.3 | **Gaylord Rockies Resort and Convention Ce** | Last 4 digits of account number　**9OZU** | $30,000.00 |
|---|---|---|---|

Nonpriority Creditor's Name
**6700 No. Gaylord Rockies Blvd.**
**Aurora, CO 80019**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify　**Money Owed**

---

| 4.4 | **Marriott Marquis Chicago** | Last 4 digits of account number　**4U48** | $277,415.00 |
|---|---|---|---|

Nonpriority Creditor's Name
**2121 So. Prairie Ave.**
**Chicago, IL 60616**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify　**Business Debt**

---

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |
|---|---|

**5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.**

Name and Address　　　　　On which entry in Part 1 or Part 2 did you list the original creditor?

| Debtor 1 | **David R Jackson** | Case number (if known) | |
|---|---|---|---|

**Chase Card Services**
**Po Box 15369**
**Wilmington, DE 19850**

Line **4.1** of (Check one):

☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

| Part 4: | Add the Amounts for Each Type of Unsecured Claim |
|---|---|

6.  **Total the amounts of certain types of unsecured claims.** This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

|  |  |  | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 0.00 |

|  |  |  | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 356,763.14 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 356,763.14 |

---

# United States Bankruptcy Court
## District of Arizona

In re    **David R Jackson**

_____
Debtor(s)

Case No. _____

Chapter    **7** _____

☐ Check if this is an
Amended/Supplemental Mailing List
(Include only newly added or
changed creditors.)

# MAILING LIST DECLARATION

I,   **David R Jackson**   , do hereby certify, under penalty of perjury, that the Master Mailing List, consisting of   **1**   page(s), is complete, correct and consistent with the debtor(s)' Schedules.

Date:   **April 29, 2024**
_____

**/s/ David R Jackson**
_____
**David R Jackson**
Signature of Debtor

Date:   **April 29, 2024**
_____

**/s/ Walter E. "Pete" Moak**
_____
Signature of Attorney
**Walter E. "Pete" Moak 004849**
**The Moak Law Firm**
**1820 E Ray Rd**
**Chandler, AZ 85225**
**(480) 755-8000   Fax: (623) 399-4293**

Jackson, David -

IRS
PO BOX 7346
PHILADELPHIA PA 19101


ARIZONA DEPARTMENT OF REVENUE
DEPARTMENT OF COLLECTIONS
2005 N CENTRAL AVENUE
PHOENIX AZ 85004


CHASE CARD SERVICES
ATTN: BANKRUPTCY
P.O. 15298
WILMINGTON DE 19850


CHASE CARD SERVICES
PO BOX 15369
WILMINGTON DE 19850


CVENT INC.
1765 GREENSBORO STATION PLACE 7TH FLOOR
MC LEAN VA 22102


GAYLORD ROCKIES RESORT AND CONVENTION CE
6700 NO. GAYLORD ROCKIES BLVD.
AURORA CO 80019


MARRIOTT MARQUIS CHICAGO
2121 SO. PRAIRIE AVE.
CHICAGO IL 60616


TOYOTA FINANCIAL SERVICES
P.O. BOX 5855
CAROL STREAM IL 60197-5855